UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINA PAYLAN,

      Plaintiff,

v.                                          Case No: 8:15-cv-1366-T-36AEP

PAMELA BONDI, *et al.*,

      Defendants.

_____/

## O R D E R

This cause comes before the Court upon the Report and Recommendation filed by Magistrate Judge Anthony E. Porcelli on February 28, 2017 (Doc. 419).  The Magistrate Judge recommends dismissal with prejudice of all but one of Plaintiff's claims.  All parties were furnished copies of the Report and Recommendation and were afforded an opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). Plaintiff filed an Objection (Doc. 424)[1], to which the following Defendants responded: the City of Tampa and Castor (Doc. 432), Quill (Doc. 433), Bondi, Ober, Brown, and Dirks (Doc. 434) and Bishop, Detrio, Marcotrigiano, and Morman (Doc. 435).

Upon consideration of the Report and Recommendation, this Court's independent examination of the file de novo, and a review of Paylan's Objection and the responses thereto, it is determined that the Report and Recommendation should be adopted, confirmed and approved in all respects.

_____

[1] Plaintiff also filed a Notice of Supplemental Authority in Support of Objections to the Report and Recommendation (Doc. 436). The Court will not consider the notice as it appears to be additional argument by Paylan, which she did not request or receive leave to file.

## I.      Background[2]

Plaintiff, Christina Paylan, has now had four opportunities to state her claim. *See* Docs 1, 51, 222, 232. She filed numerous pleadings, attended mediation, and conducted discovery. And she received a thorough and detailed analysis of her claims, prepared by the Magistrate Judge, who has given her every reasonable opportunity to present any and all facts in support of her claims. *See* Doc 216. The Court is confident at this point, having reviewed all of the pleadings, including Plaintiff's proposed Third Amended Complaint, that the Plaintiff has had ample opportunity to state her claim and has simply failed to do so on all but one of the claims.

Paylan alleges that her fiancé's family has plotted and schemed to get her arrested in order to end the relationship. In 2010, Paylan became engaged to Joseph E. Abdo (also referred to in the pleadings as "Big Joe"). At the time they started dating, Abdo had a successful internet company and provided financial support to his siblings in the thousands of dollars per month. As the relationship progressed, Abdo decided to stop providing financial support to several family members, including Defendants Michael Quill, Khalil Abdo and Marie Silva. Paylan alleges that Quill conspired with the family members and law enforcement to remove Paylan from Abdo's life.

The scheme included making false charges against her by alleging that she was drugging Abdo, and illegally possessing narcotics. Quill hired a private investigator, Defendant Jeffrey Morelock, to investigate Paylan. Morelock conducted surveillance and went through the garbage cans outside her residence (referred to as "trash pulls" throughout the pleadings) to obtain evidence of drug use that could support a search warrant. Quill and Morelock approached law enforcement with their allegations and findings but did not get a positive response initially.

---

[2] The facts are derived from Plaintiff's Corrected Verified Second Amended Complaint (Doc. 232), the allegations of which the Court must accept as true in ruling on the instant motion, unless otherwise noted. *See Linder v. Portocarrero*, 963 F. 2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

Eventually, however, the Tampa Police Department ("TPD") sought a warrant to search her home which she shared with her fiancé in June 2011. Part of the information included in the Search Warrant Affidavit was that three officers conducted three separate trash pulls and collected evidence of Demerol possession and use, witness statements from Joseph M. Abdo (Abdo's son referred to as "Little Joe" throughout the pleadings) and Johnny Gonzalez, Paylan's employee at her medical clinic, regarding Paylan's drug use and illegal sales of Demerol, among other things. The TPD executed the search warrant on June 9, 2011, and seized two vials of Demerol from the home and arrested Paylan. Paylan posted bond and was released.

On July 1, 2011, Paylan boarded a plane to Georgia and was ultimately bound for Montreal to attend a wedding. Georgia law enforcement arrested Paylan based on a TPD warrant for arrest. Paylan alleges that Defendant Russell Marcotrigiano, who is a patient of hers and has connections with Khalil Abdo, used his influence to cause the July arrest. The Hillsborough County State Attorney's Office, headed by Defendant Mark Ober, with assistance from Defendants Darrell Dirks and Christine Brown, prosecuted the charges stemming from both arrests.

Paylan fought the charges from the July 1, 2011 arrest, and the Florida District Court of Appeal found that the State Attorney's Office violated the speedy-trial rule. But Paylan was ultimately convicted of the crimes of "Obtaining a Controlled Substance by Fraud and Fraudulent Use of Personal Information" and "Fraudulent Use of Personal Information." The investigations that led to the arrests in June and July 2011 led to the prosecution and conviction in 2014. *See* Official Records Book 22842 at pages 486-488 of the Official Records of Hillsborough County, Florida, recorded Oct. 9, 2014.[3]

---

[3] The Court may take judicial notice of state court criminal convictions in reviewing a motion to dismiss. *See McDowell Bey v. Vega*, 588 Fed. Appx. 923, 926 (11th Cir. 2014) (citing Fed.R.Evid. 201(c)-(d)) (stating that it was proper for the district court judge, in evaluating a motion to dismiss a § 1983 claim, to review Clerk's docket in underlying criminal case which demonstrated that two warrants were issued against the plaintiff).

Paylan filed her Second Corrected Verified Amended Complaint[4] ("SAC") alleging various causes of action against fifteen individuals in their official and individual capacities and the City of Tampa as outlined in the Report and Recommendation. Doc. 419 at 5-7. Quill, Comaneci DeVage, David Gee, Jane Castor, the City of Tampa, Pamela Bondi, Ober, Dirks, Brown, Brian Bishop, Mark Detrio, Russell Marcotrigiano, Kenneth Morman, Morelock, Silva, and Abdo all filed dispositive motions to dismiss the SAC.

In the Report and Recommendation, Magistrate Judge Porcelli recommends that Devage's Dispositive Motion to Dismiss Plaintiff's Corrected Verified Second Amended Complaint (Doc. 246) be denied; all of the remaining Defendants' Motions to Dismiss (Docs. 233, 247, 248, 264, 267, 290, and 321) be granted, and Defendants Bondi, Ober, Dirks, Brown, Gee, Castor, Morman, Bishop, Detrio, Quill, Morelock, Marcotrigiano, Silva, Abdo, and the City of Tampa be dismissed from this case; Quill's Motion of Application of Judicial Estoppel Regarding Plaintiff's Attempt to Re-Characterize her July 1, 2011 Arrest (Doc. 311) be granted consistent with the findings of the Report and Recommendation; and all other pending motions in this case be denied as moot.

## II.     Standard

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). With regard to those portions of the Report and Recommendation not objected to, the

---

[4] Paylan's original complaint was filed on June 9, 2015. Doc. 1. She amended the complaint without a court order as permitted by Fed.R.Civ.P. 15(a)(1)(B). Doc. 51. The Court granted Paylan leave to file a second amended complaint on March 7, 2016. Doc. 216. Paylan filed the second amended complaint on April 13, 2016 (Doc. 222). And with leave of Court she filed the SAC (Doc. 232) which is the operative complaint upon which this Order is based. Paylan now seeks leave to file a Third Amended Complaint. Doc. 359.

district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed.R.Civ.P. 72. The district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id*.

### III.    Discussion

Upon de novo review, the Court agrees with the conclusions in the Magistrate Judge's Report and Recommendation ("R&R"). Paylan objects to the following in the R&R: the Magistrate Judge improperly invoked Federal Rule of Civil Procedure 12(d); probable cause did not exist for the June 9, 2010 search and arrest because Bishop's Search Warrant Affidavit contained statements from two individuals with severe credibility issues, omitted material facts, and made misrepresentations; the R&R does not properly address the warrantless search of Paylan's place of business; probable cause did not exist for the July 1, 2011 arrest; qualified immunity does not apply to shield the officers from liability for the June and July arrests; Eleventh Amendment immunity does not apply to shield Ober and Bondi because the SAC alleges that they exceeded their authority; prosecutorial immunity does not apply for Dirks and Brown's investigatory functions; the SAC properly pleads the claims against TPD; the SAC properly pleads supervisory liability; the racketeer influenced corrupt organization act ("RICO") claim's allegations meet the heightened pleading standards; the SAC properly alleges a claim for intentional infliction of emotional distress ("IIED"); and the proposed Third Amended Complaint (Doc. 359-1) corrects the deficiencies highlighted in the R&R, justifying leave to amend.

### a. Federal Rule of Civil Procedure 12(d)(1)

Paylan argues that the R&R states the appropriate standard for assessing a motion to dismiss, but does not adhere to that standard. She argues that the Magistrate Judge construed all

of the allegations in the light most favorable to Defendants, considered evidence outside the four corners of the SAC, and resolved disputed facts in favor of Defendants. She also argues that although the R&R references Rule 12(d), the Magistrate Judge did not actually invoke it because the additional documents were submitted only to aid the Court in its probable cause analysis. She also complains that the Judge used Rule 12(d) to get "leeway" to impermissibly treat the motions to dismiss as summary judgment motions.

Although the Court is typically confined to the allegations in the four corners of the complaint and must construe every factual allegation in the light most favorable to the non-moving party, the standard is actually more nuanced. The Court must construe all *factual* allegations in the light most favorable to the plaintiff, *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); it is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Paylan confuses factual allegations in her SAC with legal conclusions.

Further, for motions to dismiss pursuant to 12(b)(6), it is generally true that the "scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty*., 285 F.3d 1334, 1337 (11th Cir. 2002). If matters outside the pleadings are presented by the parties and considered by the district court, the Rule 12(b)(6) motion must be converted into a Rule 56 summary judgment motion. Fed.R.Civ.P. 12(d). The Eleventh Circuit, however, has recognized an important qualification to this rule where certain documents and their contents are undisputed: "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Harris v. Ivax Corp*., 182 F.3d 799, 802 n. 2 (11th Cir. 1999) (stating that "a document central to the complaint that the

defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

It is clear from the June 20, 2016 hearing transcript (Doc. 424-1 at 27) that the Magistrate Judge requested that the parties submit the Criminal Report Affidavit ("CRA") for the July 1, 2011 arrest and any additional information regarding the arrests to the Court for review. Paylan argues that the Magistrate Judge never informed the parties that it would invoke Rule 12(d). The R&R references Rule 12(d) and states that

> Here, given Paylan's assertions regarding the CRA are clearly divergent and that Paylan was successful in getting the July 1, 2011 charges dismissed based on the speedy-trial violation by relying upon the three-page CRA, the Court finds that Paylan should be estopped from making her allegations in this case about a two-page CRA. *Alternatively*, because the Court gave the parties notice and opportunity under Federal Rule of Civil Procedure 12(d), the Court finds under a summary judgment standard that the three-page CRA was the operative charging instrument for Paylan's July 1, 2011 arrest.

Doc. 419 at 38 (emphasis added and footnotes omitted).

Because the Magistrate Judge considered the allegations and evidence under both a motion to dismiss standard and a summary judgment standard, Paylan's argument lacks merit. Under either standard, all factual references are viewed in the light most favorable to Paylan, as the nonmoving party. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2000) (motion to dismiss); *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986) (summary judgment). Although the Magistrate Judge did not explicitly state that he would rely upon Rule 12(d) at the hearing, he gave the parties the requisite notice and opportunity which met the requirements to invoke the rule. *See* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). And the Court agrees with the

Magistrate Judge's analysis and concludes that under Rule 12(d) and 12(b)(6), the Court can rely on the three-page CRA as part of its evaluation of whether Paylan stated a claim.[5]

### b. The Search of Paylan's Home and Arrests[6]

Paylan argues that probable cause did not exist for the search of her home and the two arrests because of the unreliability of Little Joe and Gonzalez's statements, the DNA test showing that the needle recovered from the trash pull did not belong to either Paylan or Abdo, the family conspiracy to arrest her, and other facts that came to light after her arrests.

Cases brought under 42 U.S.C. § 1983 require a heightened pleading standard because the individuals involved are entitled to assert a defense of qualified immunity. *See Swann v. S. Health Partners, Inc*. 388 F. 3d 834, 836-38 (11th Cir. 2004). Under the qualified immunity analysis, the Court gives some deference to police officers and the information they possess *at the time of the act* that allegedly violates the plaintiff's rights. Holding officers accountable for information which may have very well existed at the time of their alleged acts but was not known to the officers is not permissible when conducting a qualified immunity analysis.

The facts that Paylan raise in her arguments are irrelevant to the qualified immunity analysis because the allegations do not establish that the police officers had that information at the time of their respective actions. To the extent that they had some of the information Paylan

---

[5] It is clear that the CRA is central to Plaintiff's claim, although she did not attach it to the SAC. *See*. Doc. 232, ¶ ¶ 161, 217, and 220. Upon request, Paylan presented a two page CRA, which was an incomplete document. The complete CRA, three pages in length, was presented to the Magistrate Judge. This three page CRA was also relied upon by Paylan in matters before the state court.

[6] To the extent that Paylan argues that the cases recited in the R&R regarding qualified immunity were all decided at the summary judgment stage and are therefore, inapplicable, *see* Doc. 424 at 37, the Court rejects this argument. The case law states that the qualified immunity analysis should occur at the earliest possible opportunity to avoid unnecessary discovery and distraction, including on a motion to dismiss. *See Behrens v. Pelletier*, 516 U.S. 299, 306 (1996); *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc)) (" 'Once the affirmative defense of qualified immunity is advanced ... [u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.' ").

references, *i.e.* potential criminal behavior by Gonzalez and pecuniary interest by Little Joe, that knowledge does not defeat the probable cause finding.

The analysis in the R&R is premised on the June 9, 2011 search and arrest as "rising and falling" on whether the probable cause existed for the actions. In the presence of probable cause, Paylan's claims for unreasonable search and seizure and false arrest against all parties must fail. The R&R concludes that probable cause did indeed exist, as did the state court.[7] The Court, having conducted an independent review of the pleadings, agrees with this analysis.

Paylan's SAC and proposed Third Amended Complaint do not allege with the requisite specificity the state actors' alleged falsehoods, fabrications, misrepresentations and material omissions in asserting probable cause for the search of her residence and arrest. *See* Doc. 232 at ¶¶ 17, 62, 65-70, 76, 77, 79, 85, 87, 88, 89, 91, 103, 169, 170, 171; Doc. 359-1. Further, Paylan's allegations regarding Bishop's misrepresentations and material omissions are insufficient to disturb a finding of probable cause in support of the Search Warrant. The Magistrate Judge focused on the investigative trash pulls of the three different police officers that revealed similar evidence of packages of Demerol, needles, and a prescription for one of Paylan's patients, L.B. Although Paylan alleges that Bishop was involved in the larger conspiracy to get her arrested and that Quill and Morelock's trash pulls were fabricated, Paylan did not allege that the officers fabricated evidence or were aware that any of the evidence from their three trash pulls was fabricated. And although Gonzalez and Little Joe may have had credibility issues, the evidence from the trash pulls

---

[7] Paylan challenged the validity of probable cause in the underlying state prosecution, and after taking testimony over several weeks, Circuit Court Judge Lisa Campbell issued an order finding the June 9, 2011 search warrants for her home and her office were lawful and supported by probable cause. Doc. 349, Ex. 1. Paylan made many of the same arguments before that court as she is making in this objection. Namely, she argues that Bishop's Affidavit to the court omitted the following: her status as a practicing physician with a DEA license and as Mr. Abdo's doctor, facts that shed light on Little Joe's reliability and credibility, comingling of statements made by Gonzalez and Little Joe, and facts regarding the pecuniary interest of Abdo's family members. The state court rejected all of these arguments and ultimately found that probable cause existed for the warrant and Paylan had not established that Bishop fabricated statements or made material omissions intentionally or with reckless disregard for the truth designed to mislead or deceive the signing judge into issuing the warrant. *Id.* at 13.

corroborated Little Joe's statements that he observed Demerol at the residence, and Gonzalez's statement that Paylan was using L.B.'s name to obtain Demerol. And the Magistrate Judge excluded all evidence connected to Quill, Silva, Morelock, and Khalil Abdo, and still found sufficient probable cause.

Paylan relies on *Kingsland v. City of Miami*, for the proposition that "the absence of independent corroboration via independent police work supported the fabrication of probable cause." 382 F.3d 1220, 1226 (11th Cir. 2004); *see also* Doc. 424 at 14. Here Paylan argues that Bishop did not conduct independent police work or make any attempt to corroborate the witness statements but merely listened over the phone to the conversation with Little Joe and Gonzalez. He also did not meet Gonzalez in person. And, she argues, he could not have done any additional investigative work after listening to the phone conversation, since he applied for the warrant only two days later. Doc. 424 at 14.

Although the Court agrees with the general proposition in *Kingsland*, as set forth by Paylan, that case is distinguishable from this one. In *Kingsland*, the Plaintiff was involved in a vehicular accident with a law enforcement officer, whom she asserted was to blame for the accident. 382 F.3d at 1223. Kingsland accused the arresting officers of fabricating a driving under the influence charge to cover their fellow officer's actions. *Id*. at 1224. The Eleventh Circuit was clear that if the officers' testimony in support of their opinion that Kingsland was driving under the influence (bloodshot eyes, slurred speech, and odor of cannabis) was supported by any other evidence, it would have had no problem agreeing with the district court that probable cause existed and the officers were entitled to qualified immunity. *Id*. at 1226. But in that case, there was no corroborating evidence and there were several facts that suggested that the charges were fabricated, including that the officers never searched her vehicle, originally tested her for alcohol which came up negative and changed the charge to cannabis, and no drugs were ever found or produced. *Id*.

In this case, three separate trash pulls conducted by law enforcement officers produced evidence of Demerol and evidence of a prescription for Demerol in the name of Paylan's patient. And, unlike in *Kingsland* where the officers asserted probable cause at the scene of the crime, here the evidence was produced before Bishop applied for the warrant. Further, the credibility of the witnesses in *Kingsland* pertained to conflicting accounts about where the smell of cannabis originated. *Id*. at 1227. Here, Paylan attacks the credibility of Little Joe and Gonzalez based on other issues and not conflicting statements in her case. Paylan argues that their statements were unreliable because Little Joe had a motive to set her up and made incriminating statements that he later recanted and Gonzalez was on probation at work and having financial trouble.

Paylan also argues that Bishop's omission of Gonzalez's admission to insurance fraud (dumping his car in the river and reporting it as lost rather than getting it repossessed) and his statement that he would "sell anything to make money" is evidence that the Search Warrant Affidavit was fabricated and cannot support probable cause. Paylan relies on *BeVier v. Hucal*, for the proposition that an "officer must be held to knowledge of reasonably discoverable information bearing probable cause to arrest for child neglect." 806 F. 2d 123, 128 (7th Cir. 1986); *see also* Doc. 424 at 15. As with *Kingsland*, the Court agrees with the general proposition of *BeVier* as set forth in the Objection, but its consideration does not change the Court's analysis. And the *BeVier* court also stated that "[p]robable cause is a fluctuating concept; its existence depends upon 'factual and practical considerations of everyday life.'   It is the totality of circumstances, including the facts available to defendant, that are dispositive."  *BeVier*, 806 F.2d at 126 (citations and internal quotation marks omitted). Under the totality of the circumstances, Paylan has not presented any argument that Gonzalez and Little Joe's credibility problems completely disqualified their statements as forming the basis for the Search Warrant Affidavit. Contrary to Paylan's assertions, the three investigative trash pulls provide corroborating evidence of the statements.

Paylan also attacks the Magistrate Judge's reliance on the three investigative trash pulls conducted by Haggart, Russell and Bishop. She argues that because Sergeant Haggart notified Quill that he did not believe that there was any probable cause to proceed with criminal prosecution based on the evidence produced from the trash pulls by Quill and Morelock, Bishop could not later establish probable cause to search her home using trash pulls. In assessing whether a law enforcement officer is qualifiedly immune "[t]he standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). Therefore, Sergeant Haggart's subjective opinion, based on Quill and Morelock's evidence, is not dispositive of the issue of whether probable cause existed at the time Bishop completed his Search Warrant Affidavit to search Paylan's home. By that time, the officers had completed three additional trash pulls and two witnesses provided corroborating statements. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citations omitted).

Paylan also argues that the Magistrate Judge improperly weighed conflicting evidence. The Court agrees with the basic proposition set forth in *Bozeman v. Orum* that the court cannot make credibility determinations or choose between conflicting testimony as cited to in the Objection. 422 F.3d 1265, 1267 (11th Cir. 2005), *abrogated by Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)); Doc. 424 at 20. But Paylan relies on her allegations that the items recovered from the trash pulls were planted and transported from other locations, Doc. 232 at ¶¶ 55, 56, without alleging that Bishop knew that the items were planted at the time he (or the other officers for that matter) conducted the trash pulls or completed the Search Warrant Affidavit. Although *Jones v. Cannon*, 174 F. 3d 1271 (11th Cir. 1999), also cited by Paylan, does stand for the proposition that using false evidence in an effort to obtain a conviction violates the Constitution,  no allegations

suggest that Bishop knew that the evidence was false at the time he completed the Search Warrant Affidavit.

Paylan takes particular issue with the R&R's statement that "Paylan does not allege that the evidence outlined in Bishop's Affidavit (Doc. 349-1 at 17-25) from any of the officers' investigative trash pulls was fabricated." Doc. 419 at 29. Paylan argues that her allegations found in paragraphs 55-58, 89 and 90 do exactly that. But these allegations do not include dates and they specifically reference the trash pulls from Quill and Morelock.  Therefore, they do not reference the independent trash pulls conducted by the three law enforcement officers.

In paragraph 103 of her SAC Paylan identifies all the shortcomings of the Search Warrant Affidavit.  But none of the allegations state that Bishop had knowledge that the investigative trash pulls from Haggart and Russell were fabricated. She alleges that Quill and Morelock planted this evidence, but that's not enough. If Haggart, Russell and Bishop had no knowledge that the items were planted, then they are entitled to qualified immunity, even if it is later discovered that the items were fabricated.

The state court, the Magistrate Judge and this Court rightfully agree that on the facts presented in this case, taken in the light most favorable to Plaintiff, and taking into account the probable cause analysis mentioned above, sufficient probable cause existed for Bishop to secure the warrant for her June 9, 2011 search of her residence. Bishop did investigate the informant's tip and went so far as to record a phone call to confirm many of Little Joe's accusations and reviewed the investigative trash pull evidence. Paylan's dissatisfaction with the extent of the investigation does not disturb the probable cause finding.[8]

---

[8] Paylan also points to the absence of "confirmatory laboratory testing" as defeating probable cause because Bishop did not properly investigate the evidence. Doc. 424 at 23.Paylan cites to no authority in support of this argument. The Court rejects this argument.

Ultimately, the Magistrate Judge determined that there were not enough allegations to establish scienter and knowledge by Bishop at the time he filed for the warrant that the evidence was fabricated. Despite allegations that he took unlawful steps and engaged in a conspiracy with Quill, Abdo, Silva, Dirks and Brown to pin false charges against Paylan, Doc. 232 at ¶ 205; these allegations are simply insufficient. The Court concludes that probable cause, or at a minimum arguable probable cause, existed for the June 9, 2011 search and subsequent arrest.

### c. Search of Paylan's Place of Business

The Court has reviewed the SAC's allegations regarding the search of Paylan's place of business and agrees with the analysis in the R&R. Paylan appears to be comingling the allegations of an alleged warrantless search in support of her claim based upon the search of her residence and her place of business. *See* Doc 232 at ¶¶ 113-17, 204, 207. The Magistrate Judge construed her allegations regarding the search of her business as "bolstering" her § 1983 claim for the search of her residence and not as a separate claim. Doc. 419 at 34.

Ultimately, Paylan's SAC is a shotgun pleading grouping many allegations and Defendants together in several counts, leaving the Court and the Defendants to sort through which claims pertain to which Defendants' particular acts. As the R&R cautions, it should not be "virtually impossible to know [in a complaint] which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). "Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1279 (11th Cir. 2006). The SAC is a quintessential shotgun pleading incorporating the first 185 paragraphs which includes facts about all the Defendants into each subsequent count or claim for relief. *See Wagner v. First Horizon Pharmaceutical Corp.*, 464 F. 3d 1273, 1279 (11th Cir. 2006).

### d. The July 1, 2011 arrest

Paylan attempted to rely on a two-page CRA in support of her allegation that the July 1, 2011 arrest lacked probable cause. Doc. 302, Ex. 6. Because Paylan relied upon a three-page CRA in her state court case the Magistrate Judge applied judicial estoppel principles to consider all three pages of the CRA in its probable cause analysis. *See* Doc. 419 at 38.

Plaintiff argues that the Magistrate Judge's conclusion that judicial estoppel applied to consider the third page is erroneous. Specifically, she argues that the issue is irrelevant as to her allegation that there were insufficient and otherwise fabricated evidence to support probable cause for her second arrest. Second, she argues that this case does not meet the standard for the application of judicial estoppel because Paylan was arguing a different point before the state court of appeal regarding the CRA, *i.e.*, that speedy-trial requirements were not met. And, she argues, no statement under oath has been identified, she did not put forth a contradictory position or divergence, she did not take an inconsistent position before the state appellate court than the one she is taking here, and she did not gain an unfair advantage against an opposing party because the parties in the two proceedings were different. She further argues that the state appellate court finding that the charges on the July 1, 2011 arrest were borrowed from the June 9, 2011 Search Warrant supports her allegations that there was no probable cause for her July 1, 2011 arrest.

The Court agrees with the Magistrate Judge that Paylan is judicially estopped from relying on the two-page CRA for purposes of analyzing whether probable cause existed for her July 1, 2011 arrest. She relied upon a three-page CRA in the appeal, and cannot now ask the Court to turn a blind eye in its current analysis about what information supported her arrest on July 1, 2011. The allegations that the third page was fabricated are not enough to defeat a finding of probable cause under the totality of circumstances. *See Bunres v. Pemco Aeroplex, Inc.*, 291 F. 3d 282, 1285 (11th

Cir. 2002) (stating that the judicial estoppel factors are viewed under a totality of circumstances, they are flexible and not exhaustive).

Paylan does not challenge the three-page CRA's probable cause referencing the false prescriptions in L.B.'s name.[9] Therefore, the Court agrees with the Magistrate Judge's conclusion that her § 1983 claim based upon the July 1, 2011 arrest was supported by probable cause based on the three-page CRA.

### e. Eleventh Amendment Immunity

The R&R finds that Paylan's claims against Bondi and Ober in their official capacities are barred by Eleventh Amendment immunity. Specifically, Eleventh Amendment immunity bars any claim for monetary relief by an individual against a state or its agencies, and against officers or employees of the state or its agencies in their official capacities. *Mt. Healthy City Sc. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). The only exception to Eleventh Amendment immunity that applies in this case is a claim for prospective injunctive relief. The only claim that Paylan makes for prospective injunctive relief is for "[a]n order of injunctive relief precluding Defendants [Dirks] and [Brown] from ever prosecuting [Paylan] at any time in the future." Doc. 232 at 123. She does not seek injunctive relief against Bondi or Ober. The R&R also states that Paylan's assertion that Bondi and Ober exceeded their authority is "meritless". Both parties were acting in their official capacities as "arms of the state" when they committed the alleged acts. Therefore, the

---

[9] Paylan submitted the deposition transcript of Judge Scott Farr to demonstrate that the July 1, 2011 arrest warrant was fraudulent because it did not inform Judge Farr that the same alleged criminal conduct was included in the June 9, 2011 warrant. She argues judicial estoppel is inapplicable in this case because Judge Farr relied on the information on page 3 of the CRA and the CRA had the material omission on page 2 that she was considered a fugitive at that time. The Court has reviewed the deposition and concludes that Judge Farr's testimony does not change the analysis. The R&R applied judicial estoppel specifically to consider the three-page CRA, and to rely upon it for a finding of probable cause. As Judge Farr testified in his deposition, his only concern when signing the warrant is whether probable cause is demonstrated based on the information presented to him in the affidavit at the time of the request. *See* Doc. 430-1 at 21: 4-10.

R&R concludes Bondi and Ober are entitled to Eleventh Amendment Immunity. The Court agrees with the R&R's conclusion.

Paylan objects to the dismissal of Bondi on the basis that her allegations clearly show that Bondi exceeded her authority, thereby stripping her of the immunity protection. And she objects to Ober's dismissal in his individual capacity. Paylan cites to *Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000) for the proposition that exceeding one's authority drops the immunity protection. Also Paylan asserts that the Eleventh Amendment immunity does not preclude suits in federal courts against state officials in their individual capacities citing *Jackson v. Georgia Dep't of Transp.*, 16 F. 3d 1573, 1575 (11th Cir. 1994). *See also Gamble v. Florida Dept. of Health and Rehab. Services*, 779 F.2d 1509, 1513 (11th Cir. 1986).

Assuming the truthfulness of the allegations regarding Bondi's "pill mill initiative," *see* Doc. 232 at ¶¶ 43,44,164, 208, 331(c),333, 350, and her allegations regarding Ober's prosecuting frivolous criminal cases, *see id.* at ¶¶ 156, 220-222, 238, 247, 249, 267, the Court does not find that these actions demonstrate the type of overreach of authority contemplated by the case law. As to the claims against Bondi and Ober in their individual capacities, the Court dismisses those claims. As to claims against Ober for supervisory liability, the Court also dismisses those claims as more fully discussed below.

### f. Prosecutorial Immunity: Dirks and Brown

The R&R concludes that prosecutorial immunity shields Dirks and Brown from civil suit because the acts alleged to have occurred outside of their roles as officers of the court are not linked to Paylan's alleged deprivation of rights. The two acts identified by the Magistrate Judge are Dirks' statement to the media that Paylan was "mishandling narcotics by taking 'sample narcotics' to her home[,]" Doc. 419 at 44 (citing Doc. 232 ¶¶ 143, 146); and Brown's presence at Paylan's place of business with Bishop to serve subpoenas. Accepting Paylan's allegations as true

that Dirks and Brown's action were outside of their scope as prosecutors, the Court does not find that the immunity should be stripped. Paylan has not alleged that each offending non-prosecutorial act was linked to a deprivation of her rights. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 259 (1993). In any event, the finding of probable cause for her two arrests and the search of her home eliminates the "deprivation of constitutional right" prong of her claims against these two prosecutors and thereby requires dismissal.

Paylan objects to this conclusion arguing that there are additional facts in her allegations that would deprive Dirks and Brown of immunity, *i.e.*, obstructing witness testimony and witness tampering. She points to the arrest of her maid for check fraud and Dirks' promise to her maid to drop the charges in exchange for favorable testimony against Paylan. She also points to Brown and Dirks' advice to the police officers involved to omit the information about the pecuniary interest of the family members from the Search Warrant Affidavit. *See* Doc. 424 at 41.

Paylan cites two cases in support of her argument: *Kalina v. Fletcher,* 522 U.S. 118, 118 (1997) and. *Jones*, 174 F.3d 1271.  In *Kalina*, the Supreme Court held that § 1983 may create a damages remedy against a prosecutor for making false statements of fact in an affidavit supporting an application for an arrest warrant, and otherwise engaging in investigatory functions, since such conduct is not protected by the doctrine of absolute prosecutorial immunity.  522 U.S. 118. In *Jones,* the Eleventh Circuit discusses immunity as it pertains to perjured testimony and states that "[a]lthough absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state." 174 F.3d at 1281-82.  Neither case however supports Paylan's contention that she states a claim against Dirks and Brown on these facts. She does not allege that her maid's testimony was fabricated, only that the maid was "unduly influenced" Doc. 232 at ¶ 139; and the Court has concluded that probable cause supported the Search Warrant.

The Court agrees with the R&R's conclusion regarding Brown and Dirks' entitlement to prosecutorial immunity. Essentially, the finding of probable cause moots these claims against Brown and Dirks. And in spite of pointing to additional allegations that represent acts outside of their functions as prosecutors, Paylan does not sufficiently link those acts to the affidavits that supported the search warrant and arrests.

### g. Claims against the City of Tampa

The R&R concludes that Paylan's allegations against the City of Tampa do not assert a persistent and widespread practice or deficiency of the TPD as a whole *i.e.*, that acts of familial involvement in investigations resulting in constitutional violations occur to anyone besides herself. It also concludes that she did not meet the timing and substance requirement in her notification of the claim to the City.

Paylan argues that paragraph 291 of her SAC provides an example of what she labels as a "favor arrest." But one example is insufficient. And that incident occurred after her arrest in 2013. In any event, the arresting officer in that case was subsequently fired. Doc. 419 47 n. 21.  Paylan argues that there is no requirement that the other similar incidents to which she cites in support of her claim must occur prior to hers. However, because she is alleging a claim that requires her to show a widespread problem that existed at the time of her arrest, the relevant incidents have to have occurred prior to hers. *See Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998) ("This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise.").

Paylan points to paragraphs 289-290 for her assertions that she gave notice to the City of Tampa.  She indicates that she sent letters to Castor regarding her case but nowhere in the allegations does she state the date of these letters so that the Court could infer knowledge by the City or an opportunity for the City to somehow prevent the alleged constitutional violations. *See*

*id.* Therefore, the Court agrees with the Magistrate Judge's conclusions that Paylan did not sufficiently allege a viable claim against the City of Tampa.

### h. Supervisory Liability

Paylan brings a claim against Castor for being personally liable for the alleged constitutional violations based on her role as a supervisor in the TPD. In light of the Court's finding that the officers had probable cause to arrest both times and search her home, no claim can stand against Castor based on those alleged constitutional violations. Paylan relies on her previous arguments which the Court has rejected. This same analysis applies to Ober and Bondi as well.

The Objection raises the point that the R&R does not address the claim against Ober in his individual capacity. Doc. 424 at 40. The R&R does discuss this point, stating that it would not directly address this claim because Ober's entitlement to immunity applied. Doc. 419 at 39-4 (discussing qualified immunity as barring the claims against all Defendants including Ober in Counts V, VI, IX, X, XV, and XVI due to probable cause finding), 44 n. 19. In any event, as to Ober, the analysis regarding actions in his individual capacity is the same as the discussion regarding supervisory liability. *See* Doc. 419 at 48. Because Paylan does not allege that Ober personally participated in the prosecution of her criminal cases, his only liability would stem from being Dirks and Brown's supervisor. Since the Court agrees with the R&R that the allegations against Dirks and Brown do not survive dismissal, no action can stand against Ober based on his supervision of Dirks and Brown. *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009) (stating that a plaintiff's claim for supervisory liability fails when the underlying § 1983 claim fails).

Therefore, the Court agrees with the Magistrate Judge's conclusion that Paylan's allegations are insufficient to state a claim for supervisory liability against Castor, Ober and Bondi.

### i. RICO and IIED Claims

The Court finds Paylan's arguments as to these two claims to be without merit. She reiterates her arguments in her responses to the motions to dismiss which are unavailing. The Court also agrees with the R&R that the racketeering counts do not have the necessary "continuity requirement" to state a claim. *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1267 (11th Cir. 2004) ("[W]here the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time."). And her allegation for IIED does not demonstrate acts "beyond all bounds of decency" required to state a claim. *See Hendricks v. Rambosk*, 2:10-CV-526-FTM-29, 2011 WL 1429646, at *4 (M.D. Fla. Apr. 14, 2011) (cases cited therein). Therefore, the Court agrees with the Magistrate Judge's conclusion that Paylan's allegations do not state a claim for RICO under federal or Florida law, nor IIED.

### j. Undue Invasion of Privacy and Forceful Exposure

Paylan agrees with the conclusion, but finds the reasoning erroneous because it states that the claim may not survive summary judgment. This statement in the R&R is dicta. Paylan's objection lacks merit.[10]

### k. Denial of Leave to Amend

Paylan objects to the R&R's denial of her request to amend the pleadings. Unless otherwise specified, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). The Rule goes on to state that "[t]he court should freely give leave when justice so requires." *Id*. Despite the rule that leave to amend should be given freely, the court may deny leave to amend on numerous grounds, including the futility of the amendment.

---

[10] Since the court has found that Paylan states a claim against Devage, the Court also finds that at this stage she has alleged enough to survive a qualified immunity analysis. But the Court will revisit that issue upon a motion for summary judgment or trial, if necessary.

*Maynard v. Bd. of Regents of Div. of Univ. of Florida Dept. of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1287 (11th Cir. 2003). Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

The Court has conducted an independent review of the proposed Third Amended Complaint (Doc. 359-1), and agrees with the Magistrate Judge. The allegations do not change the analysis on the probable cause finding in the R&R and do not otherwise cure the myriad of problems discussed in this Order and in the R&R. The Court agrees with the Magistrate Judge's conclusion that Paylan should be denied leave to amend based on futility.[11]

Further, under this Court's Case Management and Scheduling Order ("CMSO"), the deadline for amending pleadings and adding parties was January 15, 2016. Doc. 105 at 2. Paylan received two extensions to file her SAC. *See* Doc. 217 (providing Paylan until April 8, 2016 to file a second amended complaint) and Doc. 231 (extending the deadline to April 22, 2016 to permit Paylan to file a corrected second amended complaint). Paylan moved to amend her complaint a third time on October 4, 2016, after the CMSO deadline, and extensions thereto.

Although Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend a pleading "shall be freely given when justice so requires[,]" Rule 16(b)(4), which applies in this case, states that "[a] schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). Therefore, Plaintiff must demonstrate good cause for leave to amend. *See also Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil

---

[11] During the pendency of discovery in this case, Plaintiff deposed nine witnesses. Doc. 432 at 5 n. 3.  And Plaintiff served written discovery to all Defendants. *Id*. Plaintiff has had several months to cultivate facts to support her claims.

Procedure."). *See also Walters v. Altec Industries, Inc.*, 3:01-CV-371-J-12TEM, 2003 WL 22012046, at *1, n. 3 (M.D. Fla. Mar. 3, 2003) ("[T]he Court notes Fed.R.Civ.P. 16(b) would initially govern motions to amend pleadings when they are filed after deadlines that are prescribed in the CMSO.").  Plaintiff's Motion does not demonstrate good cause to amend the complaint.

### IV. Conclusion

The Magistrate Judge put forth tremendous effort to manage Paylan's voluminous filings and made several accommodations to permit the parties a fair opportunity to present any and all arguments in support of their respective claims and defenses. Although the case is still at the dismissal stage, there are over 400 docket entries consisting of various motions, notices, and orders. And although a detailed complaint can be helpful in putting the parties and the Court on notice of the claims and relief requested, in excess, it leads to confusion and creates a shotgun pleading.  At this point, Paylan has had several opportunities to attempt to state her various claims, particularly those against the state actors. Even while viewing her allegations in the light most favorable to her, treating the well pleaded factual allegations as true, and holding her pleadings to a less stringent standard because of her *pro se* status, she has simply failed to sufficiently allege her claims for relief.  The Court will, therefore, overrule Paylan's objections, adopt the R&R, and direct the Magistrate Judge to hold a status conference to determine what discovery matters, if any, remain. Further, within ten days of the status conference, the remaining parties will be directed to file a notice containing agreed deadlines related to discovery and a trial date. The remaining dates will be set by the Court.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

(1)     Christina Paylan's Objection to the Report and Recommendation (Doc. 424) is

**OVERRULED**.

(2)    The Report and Recommendation of the Magistrate Judge (Doc. 419) is **ADOPTED, CONFIRMED**, and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

(3)    Devage's Dispositive Motion to Dismiss Plaintiff's Corrected Verified Second Amended Complaint (Doc. 246) is **DENIED**.

(4)    All of the remaining Defendants' Motions to Dismiss (Docs. 233, 247, 248, 264, 267, 290, and 321) are **GRANTED**, and Defendants Bondi, Ober, Dirks, Brown, Gee, Castor, Morman, Bishop, Detrio, Quill, Morelock, Marcotrigiano, City of Tampa, Silva, and Abdo are **DISMISSED WITH PREJUDICE** from this case.

(5)    Quill's Motion of Application of Judicial Estoppel Regarding Plaintiff's Attempt to Re-Characterize her July 1, 2011 Arrest (Doc. 311) is **GRANTED** consistent with the findings of the Report and Recommendation.

(6)    Paylan's Motion to Amend the Second Amended Complaint (Doc. 359) is **DENIED**.

(7)    Paylan's Motion for Leave to File Objections to Report and Recommendation Beyond Local Rule Restrictions on Page Limitation (Doc. 425) is **GRANTED**.

(8)    All other pending motions in this case are **DENIED AS MOOT**.

(9)    The Magistrate Judge is directed to hold a status conference to determine what discovery, if any, remains to be undertaken regarding the sole remaining claims against Devage in Count XIII and Count XV.

(10)    Within ten days of the status conference, the remaining parties shall file a notice containing agreed discovery deadlines and a date for trial. All other deadlines will be supplied by the Court.

**DONE AND ORDERED** at Tampa, Florida on March 28, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
The Honorable Anthony E. Porcelli
Counsel of Record